UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JOANNE M. WOODS, Individually and as
Administratrix of the Estate of Kristian T. Woods
and as court-appointed Guardian of Property for
M.A. Woods, I.K. Woods and M.A. Woods[1],

                                        Plaintiff,

        v.                                                              **DECISION AND ORDER**

                                                                        13CV798S

TOWN OF TONAWANDA, et al.,

                                        Defendants.

## I.      Introduction

Before this Court are two defense motions for summary judgment dismissing this case.  Erie County and affiliated defendants (collectively "County Defendants") moved for summary judgment (Docket No. 81); the Town of Tonawanda and its affiliated defendants (collectively "Town Defendants") also moved for summary judgment (Docket No. 82; see Docket No. 83, motion to seal; Docket No. 86, Order sealing the motion) and later amended their motion (Docket No. 85).  The Town Defendants' former motion (Docket No. 82) is **terminated** in favor of their amendment (Docket No. 85).

Plaintiff's responses to both motions initially were due on January 6, 2017 (Docket No. 88), with that deadline extended after motions requesting that relief (Docket Nos. 89, 91, 90, 92), with responses ultimately due by March 13, 2017, and replies by March 27, 2017 (Docket No. 92).  Plaintiff filed her response to Town Defendants' (Docket No. 93)

---

[1]Infant names redacted pursuant to Fed. R. Civ. P. 5.2(a)(3).

and the County Defendants' (Docket No. 94) motions. The Town Defendants (Docket No. 95) and the County Defendants (Docket No. 96) then replied. These motions then were deemed submitted without oral argument.

For the reasons stated herein, the Town Defendants' Amended Motion for Summary Judgment (Docket No. 85) is **granted** and the County Defendants' Motion for Summary Judgment (Docket No. 81) is **granted**. Therefore, the Second Amended Complaint (Docket No. 39) is **dismissed**.

## II.    BACKGROUND

This is a civil rights action commenced by the administratrix of the estate of Kristian T. Woods ("Decedent") on behalf of herself, the estate, and as guardian of property for three minor beneficiaries (see Docket No. 1, Compl. ¶¶ 2-4, Ex. A). Plaintiff alleges that this action arises under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act, 42 U.S.C. § 1983 (id. ¶ 11; see Docket No. 39, 2d Am. Compl. ¶ 35), initially against the Town of Tonawanda, New York (the "Town"), the County of Erie, New York (the "County"), and various John Doe defendants (Docket No. 1, Compl. ¶¶ 5-10).

A. Pleadings

Defendants can be collected into two subdivisions. First is the Town of Tonawanda, and individual officers[2] of the Tonawanda Police Department. The second group is Erie County and named Erie County Sheriff's deputies[3].

The Town Defendants answered the original Complaint (Docket No. 7) and asserted crossclaims against Erie County (id.). Erie County answered both plaintiff's and codefendants' claims (Docket No. 11). The Town Defendants later amended their Answer (Docket No. 13). Plaintiff then filed a series of amended pleadings, adding named defendants for the John Does and amending claims (Docket Nos. 22, 39). Defendants filed their Answers to these amendments (Docket Nos. 22, 23, 40, 41).

The current pleading is plaintiff's Second Amended Complaint (Docket No. 39). Therein, she alleges in the First Cause of Action that the Town Defendants violated Decedent's civil rights through cruel and inhuman punishment (id. ¶¶ 53-62). She alleges in the Second Cause of Action that the County Defendants violated Decedent's civil rights through infliction of punishment without due process of law (id. ¶¶ 64-73). Both claims arise from Decedent's arrest by the Town of Tonawanda Police on May 2, 2012, while Decedent showed signs of "serious mental disease or defect and required immediate medical care and treatment" (id. ¶¶ 54, 65). She claims that defendants were deliberately indifferent to Decedent's serious medical condition (id. ¶¶ 55, 66). The Tonawanda police

---

[2]Officers Michael Marciano, Corey Flatau, Nicholas Solonikis, Lieutenant Baumgartner, Officers McNamara, Murphy, Lieutenant McNamara, Michael Botham, Officers Franco and Lewandowski, Docket No. 39, 2d Am. Compl. ¶¶ 5-16.

[3]James Franklin, Thomas Thompson, Timothy Higgins, Mark Marren, Eric Fintak, John Gavin, Justin Tedesco, Chad Myers, Cesar Botello, John "Jack" Robinson, Phillip Kupple, Daniel Harris, Sergeant Anthony LoDestro, and Deputy Haladay, Docket No. 39, 2d Am. Compl. ¶¶ 18-33.

transported Decedent to police headquarters (id. ¶ 56), where he was processed and detained for four hours (id. ¶¶ 56-57). Plaintiff alleges that the Town Defendants denied Decedent prescription medication for his mental disease despite knowing that he required that medication (id. ¶ 58). Decedent's family appealed to the Tonawanda police officers to provide Decedent with his medication but was repeatedly rebuffed (id. ¶ 59). The family repeated these appeals to the Sheriff's deputies when Decedent was in the Erie County Holding Center during his sixteen-hour detention there, again to no avail (id. ¶¶ 70, 68). Plaintiff alleges that, as a result of this deprivation, Decedent fell into a coma on May 4, 2012, and remained comatose until his death on October 23, 2012 (id. ¶¶ 60, 71). She asserts that the refusal to provide treatment was part of the Town's custom and policy (id. ¶ 61) and was a County custom and policy (id. ¶ 72), in violation of Decedent's due process rights under the Fifth and Fourteenth Amendments (id. ¶¶ 61, 72).

In the Third Cause of Action, plaintiff alleges that the Town negligently hired and trained its officers, leading to Decedent's injuries and eventual death (id. ¶¶ 75-79). Similarly, in the Fourth Cause of Action plaintiff also alleges against Erie County a similar negligent hiring and training through the Sheriff's Department of the individual deputies (id. ¶¶ 81-85).

In the Fifth Cause of Action, plaintiff alleges the Town Defendants deprived Decedent of his rights to life and liberty without due process of law (in violation of the Fifth and Fourteenth Amendments) by not providing medical care to Decedent despite his family's requests, depriving Decedent of his health and ultimately his life (id. ¶¶ 87-91). Again, in the Sixth Cause of Action, plaintiff alleges a similar deprivation by the County Defendants (id. ¶¶ 93-97).

In the Seventh Cause of Action, plaintiff asserts that the Town Defendants seized Decedent without probable cause and in violation of his due process (id. ¶¶ 99-107). She contends that Decedent was seated on the sidewalk showing overt signs of mental illness when the criminal complainant alleged that Decedent was attempting to steal her car (id. ¶¶ 99-100). Plaintiff denies Decedent could commit any crime due to Decedent's "clear mental disease or defect which required immediate medical care and treatment" (id. ¶ 101). The Tonawanda police officers (unreasonably to plaintiff) accepted complainant's accusation at face value and arrested Decedent (id. ¶ 102), with officers "concoct[ing] and fil[ing] a misleading report" (id. ¶ 103).

The Eighth Cause of Action alleges the Town Defendants falsely imprisoned Decedent (id. ¶¶ 109-12). The Ninth Cause of Action also alleges false imprisonment of Decedent by the County Defendants (id. ¶¶ 114-16).

Plaintiff alleges in the Tenth Cause of Action that the Town Defendants deprived Decedent of his parental rights without due process of law, by arresting him in May of 2012 and depriving him of medication, leading to his detention and separation from his three children. Decedent eventually lapsed into a coma and died, making it impossible for Decedent to be with his children. (Id. ¶¶ 118-21).

The Eleventh Cause of Action alleges that the Town Defendants wrongfully caused Decedent's death (id. ¶¶ 123-26). Similarly, the Twelfth (and final) Cause of Action alleges that the County Defendants also wrongfully caused Decedent's death (id. ¶¶ 128-31).

Plaintiff (for herself and the estate of Decedent) seeks to recover compensatory and punitive damages for these claims (id., WHEREFORE Cl., at pages 32-33).

Following the Answers to the Second Amended Complaint (Docket Nos. 40 (Town Defendants), 41 (County Defendants)), the parties conducted and completed discovery (e.g., Docket Nos. 50, 74-77) and sought extensions of the Scheduling Order (e.g., Docket Nos. 46, 51, 71). Defendants then filed their present Motions for Summary Judgment.

### B. Defense Motions for Summary Judgment

Taking the motions in the order in which the Decedent interacted with defendants, this Court first considers the Town Defendants' Amended Motion for Summary Judgment (Docket No. 85) and then the County Defendants' Motion (Docket No. 81). Both motions assert common arguments and allege a common set of facts. This Court will consider defendants' factual assertions together, discussing plaintiff's factual contentions as they differ with defendants' assertions; the common grounds argued by defendants; and plaintiff's global responses to them. Finally, this Court will note distinct defenses and arguments raised by the Town Defendants and the County Defendants and plaintiff's responses to them.

#### 1. Local Rule 56 Statements

All defendants replied (Docket No. 95, Town Defs. Reply Memo. at 2-3; Docket No. 96, County Defs. Reply Memo. at 2) that plaintiff did not submit an opposing Local Rule 56 statement to their Statements in support of their motions. Instead, she declared that she "strenuously" objects to the facts stated in defendants' Memoranda of Law

(Docket No. 93, Pl. Atty. Decl. ¶ 4 (opposing County Defendants' motion); Docket No. 94, Pl. Atty. Decl. ¶ 4 (opposing Town Defendants' motion); cf. Docket No. 95, Town Defs. Reply Memo. at 3; Docket No. 96, County Defs. Reply Memo. at 2), not expressly addressing their Statements. Plaintiff concluded in her attorney's declaration (e.g., Docket No. 93, Pl. Atty. Decl. ¶ 50), in her own affidavit (Docket No. 93, Pl. Aff. ¶ 37), and in the affidavit of Decedent's sister, Kara Woods (e.g., Docket No. 93, Kara Woods Aff. ¶¶ 1, 16) that this case is

> "wrought with inconsistencies, unanswered questions, medical uncertainties and questionable reporting practices, Defendants, in their motion papers, reach bold and baseless conclusions with respect"

to Decedent's death. Plaintiff, however, has not produced in admissible form evidence to counter defendants' factual assertions or point out those inconsistencies, unanswered questions, medical uncertainties, and questionable reporting practices. Plaintiff's counsel bases his declaration only upon his "personal knowledge and the facts, information and documentation discovered by me during the course of my investigation into the incident giving rise to this claim, including, but not limited to, review of all prior pleadings and proceedings had herein" (Docket No. 93, Pl. Atty. Decl. ¶ 2) and less on admissible evidence required for a Rule 56 motion.

Defendants each submitted their Rule 56 Statements (Docket Nos. 85, Town Defs. Statement, 81, County Defs. Statement) with citations to the record to admissible evidence in support of the factual assertions. Plaintiff's counsel cites to the evidentiary record as well. Pursuant to Local Rule 56(a)(2), this Court relies upon the facts alleged by defendants, but notes where appropriate plaintiff's apparent objections.

2.  Facts

Decedent had a history of psychiatric episodes starting in 2010 (Docket No. 85, Town Defs. Statement ¶¶ 20-29; Docket No. 81, County Defs. Statement ¶¶ 7-8; <u>see</u> Docket No. 93, Pl. Aff. ¶ 13) and was prescribed Risperdal, an antipsychotic medication (Docket No. 93, Pl. Aff. ¶ 14; Docket No. 85, Town Defs. Statement ¶¶ 29-30).  Decedent, however, was inconsistent in taking that medication (<u>see</u> Docket No. 93, Pl. Aff. ¶ 15; <u>see also</u> Docket No. 93, Kara Woods Aff. ¶ 7), stopping that medication between January 2011 and May 2012 (Docket No. 85, Town Defs. Statement ¶¶ 30, 31; Docket No. 81, County Defs. Statement ¶ 9).  Plaintiff also noted that, prior to May 2, 2012, the Decedent did not have a criminal record (Docket No. 93, Pl. Aff. ¶ 20).

On April 30, 2012, plaintiff noticed that Decedent was "acting strangely, in a similar fashion as during his 2010 and 2011 episodes (withdrawn, paranoid, and just not acting like his normal self)" so plaintiff gave him one Risperdal pill and witnessed him take it (<u>id.</u> ¶ 16; Docket No. 81, County Defs. Statement ¶¶ 11, 12; <u>see</u> Docket No. 85, Town Defs. Statement ¶ 32).  On the evening of May 1, 2012, Decedent reported to work on the overnight shift with the Buffalo Fire Department, finishing at 8 am on May 2, 2012 (Docket No. 93, Pl. Aff. ¶ 17; <u>see also</u> Docket No. 85, Town Defs. Statement ¶ 34).

On May 2, 2012, Decedent's shift ended, and he went to the Walgreens at Sheridan Drive and Parker Avenue in the Town of Tonawanda (Docket No. 85, Town Defs. Statement ¶ 35).  There, Decedent approached a complainant who was in her car with her children and allegedly placed his arm inside her car and demanded her phone and purse (<u>id.</u> ¶¶ 37-38; Docket No. 85, Ex. I, Dep. Tr. Kourtney Smith (complainant) at 8-10, 14-15, Ex. OO, Supporting Deposition of Kourtney Smith; <u>cf.</u> Docket No. 93, Pl. Aff.

¶ 19). The Town police department was contacted, and officers arrived there with complainant describing the incident (Docket No. 85, Town Defs. Statement ¶¶ 40-41). Plaintiff argues that individual defendants at the scene observed and noted Decedent's erratic behavior (Docket No. 93, Pl. Atty. Decl. ¶¶ 19-27) and later plaintiff and Decedent's sister, Kara Woods, attempted to warn the Town Defendants about Decedent's mental condition but to no avail (id. ¶ 28). The police also had K-9 unit present and searching Decedent's car, found marijuana (Docket No. 85, Town Defs. Statement ¶ 43). The police had a Town of Tonawanda paramedic (defendant Michal Botham, Docket No. 81, County Defs. Statement ¶¶ 21-23, 25) evaluate Decedent (Docket No. 85, Town Defs. Statement ¶ 44), and Botham concluded that Decedent was physically fit enough to be arrested (id.; Docket No. 81, County Defs. Statement ¶¶ 25, 16). While at the scene, paramedic Botham spoke with plaintiff on the telephone who advised him that Decedent had a psychiatric history and was on prescribed Risperdal and that he had not taken his dosage (Docket No. 81, County Defs. Statement ¶ 24; Docket No. 85, Town Defs. Statement ¶ 45).

Decedent was arrested by some of the named Town Defendants (Docket No. 81, County Defs. Statement ¶ 1). He was charged with attempted robbery in the second degree, endangerment of the welfare of a child, menacing, and unlawful possession of marijuana (id.; Docket No. 85, Town Defs. Statement ¶ 46). The Town police transferred Decedent to the police station, wherein he made verbal threats to one officer but displayed no physical aggression (Docket No. 85, Town Defs. Statement ¶ 47).

Plaintiff brought a new prescription of Risperdal to the police station for Decedent and the pill was administered by paramedic Botham to the Decedent pursuant to Town

procedure (Docket No. 85, Town Defs. ¶ 51, Docket No. 85, Ex. N, Dep. Tr. of defendant paramedic Michael Botham at 41, 44-45; Docket No. 81, County Defs. Statement ¶¶ 17, 26). Botham testified that he obtained the Risperdal from plaintiff and "dispensed his medicine to" Decedent (Docket No. 85, Ex. N, Botham Tr. at 41); that Decedent's mother (the plaintiff) was bringing in his medicine; that he had missed a dose and that the paramedics would give it to him (id. at 43). Botham testified that Decedent reached out and took the offered medicine (id. at 44-45). Plaintiff does not dispute this.

Decedent then was arraigned in his cell, the judge ordered a forensic examination for Decedent, and Decedent was transferred to the Erie County Holding Center ("ECHC") (Docket No. 85, Town Defs. Statement ¶ 52).

Decedent arrived at ECHC at approximately 7:59 pm (Docket No. 81, County Defs. Statement ¶ 2). Once at ECHC, Decedent was processed and evaluated and deemed to be a "low" referral for forensic evaluation and otherwise cleared for entry into the general population (Docket No. 85, Town Defs. Statement ¶ 85; see Docket No. 81, County Defs. Statement ¶ 4; Docket No. 93, Pl. Atty. Decl. ¶¶ 31, 35). A "low" referral meant that any forensic evaluation by a mental health professional could be done up to five days later (Docket No. 85, Town Defs. ¶ 55). Plaintiff points out that one evaluator, ECHC nurse Patrick Sinclair, performed a mandatory suicide screening and concluded that Decedent suffered from anxiety but determined that he was "medically cleared for court" (Docket No. 93, Pl. Atty. Decl. ¶ 31, Pl. Ex. M). Nurse Sinclair filled out a "Medication Verification" form during intake listing "Risperdal prn[4] not verified," with a notation of "days ago" for

---

[4]Prescription notation "prn" means as circumstances need, from the Latin pro re nata, Taber's Cyclopedic Medical Dictionary 1486 (16th illus. ed. 1989).

when Decedent last took Risperdal (id. ¶ 32, Pl. Ex. N).  Plaintiff also found purported discrepancies in two answers on Decedent's medical intake questionnaire (id. ¶ 34; Pl. Ex. O, Nancy Stevens Dep. Tr. at 32-33).

Despite this "low" referral status, Decedent later was seen by a mental health professional, Kelly Ghani, because the Town Justice had ordered Decedent's evaluation (id. ¶ 36, Pl. Ex. Q, Dep. Tr. Kelly Ghani at 37).  She also testified that she saw Decedent at the request of the classification deputy who interviewed Decedent the day before because the deputy had concerns because Decedent was acting "odd" (Docket No. 81, County Defs. Statement ¶ 63, County Defs. Ex. P, Ghani Dep. Tr. at 35).  Ghani also noted that Risperdal is usually not prescribed on a prn or an as needed basis (Docket No. 93, Pl. Atty. Decl. ¶ 37, Pl. Ex. Q, Ghani Tr. at 52).  Once Ghani mentioned that she would contact Decedent's mother, he shut down and repeatedly said he needed a moment of clarity (Docket No. 81, County Defs. Statement ¶ 66).  Ghani then said she was going to call a deputy into the room, the Decedent put his hands in his pants and produced a sharpened piece of his eyeglasses (id. ¶ 67; Docket No. 85, Town Defs. Statement ¶ 58).  Deputies responded and Ghani left to speak with the medical department and arrange for Decedent's medical and psychiatric evaluation, later calling the Erie County Medical Center ("ECMC") (Docket No. 85, Town Defs. Statement ¶¶ 58-59; Docket No. 81, County Defs. Statement ¶¶ 69-75).  Deputies then transported Decedent to ECMC on 12:40 pm (Docket No. 85, Town Defs. Statement ¶ 85).

At ECMC, Decedent became disruptive (Docket No. 81, County Defs. Statement ¶¶ 120-21).  Defendant deputy John Gavin testified that ECMC Police attempted to pick Decedent up in order to place him on a gurney but "all hell broke loose," with Decedent

yelling, rolling, and trying to get off the table (id. ¶ 122). The Town Defendants contend that it was the ECMC staff that decided to place Decedent on a hospital gurney restraint (Docket No. 85, Town Defs. Statement ¶ 65). Decedent then became disruptive and attempted to leave the gurney; a nurse administered a second set of shots, leading to that nurse administering CPR on the Decedent (Docket No. 81, County Defs. Statement ¶¶ 122, 124-25, 131). Decedent was administered two set of shots which allegedly caused him to go into cardiac arrest (Docket No. 85, Town Defs. Statement ¶¶ 67-70; see Docket No. 81, County Defs. Statement ¶¶ 115, 124-25, 131; Docket No. 93, Pl. Atty. Decl. ¶ 45). The injections administered were Haldol and Ativan (Docket No. 85, Town Defs. Statement ¶ 68; Docket No. 81, County Defs. Statement ¶ 131). Decedent never regained consciousness and passed away on October 23, 2012, over five months later (Docket No. 85, Town Defs. Statement ¶ 71; see Docket No. 93, Pl. Atty. Decl. ¶ 48). An autopsy report of October 24, 2012, revealed the manner of death as "undetermined" (Docket No. 93, Pl. Atty. Decl. ¶ 49, Pl. Ex. X at 5). That report indicated the cause of death was "complications of Global Hypoxic Encephalopathy" but the examiner could not determine the cause for the presenting problems (id., Pl. Ex. X at 5).

The Town Defendants establish that the cardiac arrest occurred on May 3, 2012, almost 20.5 hours after he left the Town's custody and control (id. ¶ 72). Plaintiff, however, contends that there are material issues of fact as to the timing and nature of medication administered to Decedent (Docket No. 93, Pl. Atty. Decl. ¶ 46).

C.  Common Defenses Asserted in These Motions

Both sets of movants deny that they were deliberately indifferent to Decedent's mental health in failing to treat his apparent condition (Docket No. 85, Town Defs. Memo. at 4-1; Docket No. 81, County Defs. Memo. at 4-11).

The Town Defendants assert that the officers had ample probable cause to arrest the Decedent, hence not violating his Fourth Amendment rights (Docket No. 85, Town Defs. Memo. at 17-19).  The County Defendants also rejects plaintiff's Ninth Cause of Action because the Decedent's subsequent confinement was privileged, therefore plaintiff's claim for false imprisonment of the Decedent should be dismissed (Docket No. 81, County Defs. Memo. at 19-20).

Both Town and County Defendants assert that plaintiff failed to serve any of the individual defendants (Docket No. 85, Town Defs. Memo. at 22-24; Docket No. 81, County Defs. Memo. at 21).  Since there are no viable claims against the individual Town Defendants, the Town Defendants conclude that there cannot be claims against the Town under § 1983 (Docket No. 85, Town Defs. Memo. at 24-25).

Both sets of movants argue that there was an intervening and superseding cause for Decedent's death—the actions of medical personnel at ECMC (Docket No. 81, County Defs. Memo. at 22; Docket No. 85, Town Defs. Memo. at 33-36).

Both movants argue that plaintiff's failure to train causes of action should be dismissed (Docket No. 85, Town Defs. Memo. at 15-16; Docket No. 81, County Defs. Memo. at 15-16), but for slightly different reasons.  The Town Defendants argue that Plaintiff's negligent hiring, training, and supervision claim should be dismissed absent

proof that the individual defendants had a prior propensity to disregard the medical needs of inmates (Docket No. 85, Town Defs. Memo. at 15-16).  The County argues that the Sheriff (not named a defendant in this case) is solely responsible for training his deputies and thus the County is not legally responsible for their training (Docket No. 81, County Defs. Memo. at 15-16).  Alternatively, the County asserts that the deputies were properly trained and did not violate stated County policy (id. at 16; Docket No. 81, County Defs. Ex. FF).  As for the two nurses Sinclair and Stevens not named as defendants here, the County states that they are employees of contractor Maxim Healthcare Service, thus the County was not responsible for their actions (Docket No. 81, County Defs. Memo. at 16).

Both movants oppose reliance upon plaintiff's expert, Michael Levine, for failing to meet the standards for Federal Rule of Evidence 702 (Docket No. 85, Town Defs. Memo. at 36-40; Docket No. 81, County Defs. Memo. at 23-25).

Finally, they also both argue against imposition of punitive damages as against the municipalities or the officials in their official capacities, City of Newport v. Fact Concerts, Inc., 453 U.S. 247 (1981) (Docket No. 85, Town Defs. Memo. at 40; Docket No. 81, County Defs. Memo. at 20).

### D.  Town Defendants' Amended Motion for Summary Judgment (No. 85)

The Town Defendants also assert defenses particular to them.  First, they contend that plaintiff cannot argue that the defendants deprived Decedent of his parental rights since there was no proceeding commenced by them to terminate Decedent's parental rights (Docket No. 85, Town Defs. Memo. at 19-20).

Since Decedent would not have a viable claim for his wrongful death, the Town Defendants conclude that they are not liable to plaintiff and Decedent's distributees for wrongful death (Docket No. 85, Town Defs. Memo. at 21-22).

Next, the Town Defendants argue that plaintiff's state law negligence claims (the Eleventh Cause of Action and possibly the Third Cause of Action for negligent hiring) are untimely under the New York State General Municipal Law, since they were not commenced within a year and ninety days of Decedent's injury (Docket No. 85, Town Defs. Memo. at 29-30). Presuming the date of Decedent's injury was May 2, 2012, when he was arrested, a timely Complaint needed to be filed by July 31, 2013, but plaintiff commenced this action on August 1, 2013, one day later (id. at 29). They argue this although plaintiff's counsel signed the original Complaint on July 31, 2013 (Docket No. 1, at 25).

In a similar vein, the Town Defendants also assert that plaintiff failed to appear at a New York General Municipal Law § 50-h hearing **prior to** filing the Summons and Complaint (Docket No. 85, Town Defs. Memo. at 30-33), see N.Y. Gen. Mun. L. § 50-h (5) (action may not be commenced until compliance with demand for examination). In her affidavit, plaintiff swears that she attended the 50-h hearing on January 2, 2014 (Docket No. 93, Pl. Aff. ¶¶ 6-7), but this was months after filing the original Complaint and its amendments (Docket Nos. 1, Compl., 22, Am. Compl. (filed Dec. 5, 2013)), but months before the Second Amended Complaint (Docket No. 39, filed May 2, 2014).

### E. County Defendants' Motion for Summary Judgment (No. 81)

The County Defendants note the fact that Sheriff Timothy Howard was never named as a defendant in this action (Docket No. 81, County Defs. Statement ¶ 5; but cf. Docket No. 39, 2d Am. Compl.). They also state that plaintiff failed to serve the individual deputies named as defendants (Docket No. 81, County Defs. Statement ¶ 6, County Defs. Ex. D (defendants' affidavits denying being served)).

The County Defendants also argue that plaintiff sued the Sheriff's Department, but that entity is not suable (Docket No. 81, County Defs. Memo. at 20-21). Plaintiff alleged several causes of action against "Defendant County of Erie through its Erie County Sheriff's Department" (Docket No. 39, 2d Am. Compl., 2d, 4th, 6th, 9th, and 12th Causes of Action). Plaintiff responds that she did not sue the Sheriff's Department and she is unsure why this argument is being made (Docket No. 94, Pl. Memo. at 20). Related to this argument is the County Defendants' contention that the County is not liable for Sheriff's deputies under a respondeat superior theory given the special relationship of the Sheriff and the Sheriff's Department to the County (Docket No. 81, County Defs. Memo. at 13-15). The County Defendants next assert that plaintiff failed to allege personal involvement to establish municipal liability (Docket No. 81, County Defs. Memo. at 16-19).

### F. Plaintiff's Responses

#### 1. Response to Town Defendants' Motion (Docket No. 93)

Asserting Decedent's Eighth Amendment rights, plaintiff argues that the Town Defendants (as well as the County Defendants) were deliberately indifferent to Decedent's mental condition, failing to treat it or to follow internal policies calling for

observation and supervision (Docket No. 93, Pl. Memo. re Town Defs. Motion at 3-6; <u>see also</u> Docket No. 94, Pl. Memo. re County Defs. Motion at 3-7).  Minimally, she contends that there are fact issues that a jury should decide rather than dismissal on motion (Docket No. 93, Pl. Memo. re Town Defs. Motion at 3, 5-6; <u>see also</u> Docket No. 94, Pl. Memo. re County Defs. Motion at 3, 5, 6).

As for her negligent hiring, training, and supervision claim, plaintiff argues that several material questions of fact exist as to the training of police officers dealing with persons with mental illness, whether defendants understood the signs and symptoms of Decedent's mental illness (Docket No. 93, Pl. Memo. re Town Defs. Motion at 7).  During their depositions, none of the Town Defendants mentioned Excited Delirium Syndrome or that Decedent might have been suffering from it (<u>id.</u> at 8).

Next, plaintiff denies that defendants had probable cause to arrest Decedent following his incident with complainant Kourtney Smith, arguing that Decedent due to his condition lacked the <u>mens rea</u> to commit any offense (<u>id.</u> at 8-9).  Plaintiff concludes that there was a material issue of fact whether defendants had probable cause to arrest Decedent on May 2, 2012 (<u>id.</u> at 10).

Since Decedent was a father of three children when he was arrested (and subsequently died), plaintiff asserts that his arrest and detention deprived these children of his care, nurturing, and guidance.  Plaintiff believes that this deprivation is actionable against defendants.  (<u>Id.</u> at 10-11.)  She contends that this deprivation is not limited to formal process terminating parental rights (<u>id.</u> at 11) and that the infants could assert this claim (<u>id.</u>) even though the minors are not plaintiffs in this case.  Plaintiff is representing

herself and as guardian for the "Property" for the three infants (which presumably includes this claim).

Plaintiff argues that the Town is responsible for damages because it indemnifies the defendant officers (id. at 11-13; see also Docket No. 94, Pl. Memo. re County Defs. Motion at 18-19).

As for service of the Amended Complaint, plaintiff argues that it electronically served the Town Attorney (Docket No. 93, Pl. Memo. re Town Defs. Motion at 13). If this method was defective, plaintiff seeks leave to file a motion to serve the Amended Complaint upon all individual defendants nunc pro tunc (id.). She denies any prejudice to the individual defendants not personally served if they were served later nunc pro tunc (id. at 14). Similarly, plaintiff argues that she served the County Attorney with the Second Amended Complaint to serve the named deputies (Docket No. 94, Pl. Memo. re County Defs. Motion at 21). She also offers to move for leave to serve the Amended Complaint upon the individual County defendants and argues that they are not prejudiced by this lack of service (id. at 22, 21).

As for qualified immunity to defendants, plaintiff retorts that they are not eligible for immunity because they violated Decedent's Eighth Amendment rights and there are questions of fact whether it was reasonable for defendants to believe that their conduct did not violate Decedent's clearly established rights (id. at 15, 16; see Docket No. 94, Pl. Memo. re County Defs. Motion at 14-17). She contends that the record here is insufficient for this Court to find whether defendants' actions were reasonable (Docket No. 93, Pl. Memo. re Town Defs. Motion, at 16-17; Docket No. 94, Pl. Memo. re County Defs. Motion at 16-17).

As for the Town Defendants' contention that the Complaint was untimely, plaintiff argues that the actual accrual date was when Decedent suffered cardiac arrest on May 3, 2012, and placed into a coma the next day (id. at 18). Thus, the Complaint was filed within one year and ninety days to be timely for those events (id.). As for defendants' argument that plaintiff failed to appear at a pre-Complaint 50-h hearing, plaintiff replies that defendants were not prejudiced since she did testify (id. at 18-20; see also Docket No. 94, Pl. Memo. re County Defs. Motion at 22-23). Plaintiff repeated this argument for the County Defendants, but these defendants did not raise General Municipal Law § 50-h compliance as a defense.

Plaintiff then rejects defense arguments of intervening or superseding cause, pointing again to the four hours Decedent was in Tonawanda police custody and suffering while there (id. at 20-21; see Docket No. 94, Pl. Memo. re County Defs. Motion at 10-11 (Decedent while detained at the ECHC)). She points out that under New York procedural law if a summary judgment movant fails to provide enough evidence to establish the absence of a triable issue of fact that warrants dismissal (Docket No. 93, Pl. Memo. re Town Defs. Motion at 21; Docket No. 94, Pl. Memo. re County Defs. Motion at 10-11, citing Curtiss v. County of Livingston, 231 A.D.2d 960, 648 N.Y.S.2d 387 (4th Dep't 1996) (citing CPLR 3212).

Plaintiff argues the admissibility under Rule 702 of an expert's opinion of Michael Levine because it focuses on his area of expertise, police training in identifying signs of mental illness, including Excited Delirium Syndrome (Docket No. 93, Pl. Memo. re Town Defs. Motion at 23; see Docket No. 94, Pl. Memo. re County Defs. Motion at 11-14). Conceding that Levine was not a medical doctor, plaintiff replies that Levine has extensive

field experience in arrests, specifically of suspects exhibiting bizarre behavior (Docket No. 93, Pl. Memo. re Town Defs. Motion at 24).

Finally, plaintiff argues that issues of fact exist on the question whether punitive damages are warranted, especially against the individual defendants (id. at 24-25; see Docket No. 94, Pl. Memo. re County Defs. Motion at 20).

### 2. Response to County Defendants' Motion (Docket No. 94)

Plaintiff made similar arguments to the common defenses raised by the County Defendants. As for distinctly County defenses, plaintiff responds that the County cannot evade liability for training of Sheriff's deputies by arguing (a) that the proper party is the Sheriff's Department but (b) the Sheriff's Department is not a suable entity (Docket No. 94, Pl. Memo. re County Defs. Motion at 7-8). Plaintiff raises an issue of fact whether nurses Patrick Sinclair and Nancy Stevens were County employees or independent contractors (id. at 9). Plaintiff, however, does not state that this fact is material and, by not submitting a responding statement of fact waives factual allegations made by the County Defendants in their Rule 56 Statement. Plaintiff also did not name Sinclair or Stevens as defendants. Defendants identified Sinclair and Stevens as employees of contractor Maxim Medical Healthcare Services Inc.; Maxim supplied nurses to ECHC to supplement its staff (Docket No. 81, County Defs. Statement ¶¶ 3, 32, 33). Whether the County is responsible for these two nurses becomes material if, for example, the County disclaimed responsibility for their actions due to the contractual nature of their services and those actions are relevant to plaintiff's claims. The County has not made such an argument and plaintiff makes no such allegation.

As for the privileged confinement argument the County Defendants raise, plaintiff counters that they disregarded the town judge's order for a forensic evaluation, with Decedent arriving at ECHC on 8 pm at May 2 and not receiving that evaluation until 11 am the next day (Docket No. 94, Pl. Memo. re County Defs. Motion at 9-10). She concludes that an issue of fact remains on the reasonableness of Decedent's confinement under those circumstances and whether it was "privileged" (id. at 10).

Next, plaintiff argues that the County is not entitled to summary judgment based on respondeat superior because the County is the true party in interest (id. at 17-19). Plaintiff is "baffled" by the County defendants arguing that the Sheriff's Department is not suable even though plaintiff did not name the department as a defendant (id. at 20).

In response to both sets of motions, plaintiff points to several issues of fact (noted above in describing her opposition to various points raised) that should preclude summary judgment.

This Court also considered defendants' separate replies (Docket No. 95, Town Defs. Reply Memo; Docket No. 96, County Defs. Reply Memo.) which mostly reinforces arguments they previously made and (as noted above) plaintiff's non-compliance with Local Rule 56(a)(2).

### III.  DISCUSSION

#### A.  APPLICABLE STANDARDS

##### 1.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law," Fed. R. Civ. P. 56(a). A fact is "material" only if it "might affect the outcome of the suit under governing law," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A "genuine" dispute, in turn, exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party," id. In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion," Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970) (internal quotations and citations omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper," Bryant v. Maffucci, 923 F.32d 979, 982 (2d Cir. 1991) (citation omitted). Indeed "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper," Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 f.3d 77, 82,-83 (2d Cir. 2004) (citation omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial," Anderson, supra, 477 U.S. at 249.

"When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim," Cordiano v. Metacon Gun Club, Inc., 575 F.3d 199, 204 (2d Cir. 2009), citing, Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Where the moving party demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence

demonstrating the existence of a genuine dispute of material fact," Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting Celotex, supra, 477 U.S. at 323). The party against whom summary judgment is sought, however, "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original removed).

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the nonmovant. Ford, supra, 316 F.3d at 354.

As briefly noted above, the Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, and if movant fails to submit such a statement it may be grounds for denying the motion, W.D.N.Y. Loc. Civ. R. 56(a)(1), (2). The movant is to submit facts in which there is no genuine issue, *id.* R. 56(a)(1), while the opponent submits an opposing statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56(a)(2). Each numbered paragraph in the movant's statement will be deemed admitted unless specifically controverted by a correspondingly numbered paragraph in

the opponent's statement, id.  **Absent such an opposing statement, the facts alleged by the movant are deemed admitted.**  Each statement of material fact is to contain citations to admissible evidence to support the factual statements and all cited authority is to be separately submitted as an appendix to that statement, id. R. 56(a)(3).

### 2. Deliberate Indifference and Detention Conditions for Pretrial Detainee

Since Decedent was not in prison during these events, the Eighth Amendment Cruel and Unusual Punishment Clause does not provide the constitutional standard for his detention and medical care.  Therefore, plaintiff's Eighth Amendment claims are **denied**.

Plaintiff's claims, however, arise under the Due Process Clause of the Fourteenth Amendment for Decedent's pre-judgment detention.  In some ways, the standards under the two constitutional provisions are similar.

If the Eighth Amendment applied, in order to state a claim for deliberate indifference due to inadequate medical treatment, plaintiff must allege that defendants acted with "deliberate indifference to [a] serious medical need," LaGrange v. Ryan, 142 F. Supp. 2d 287, 293 (N.D.N.Y. 2001); see Estelle v. Gamble, 429 U.S. 97, 104 (1976).

This Eighth Amendment claim has two elements, an objective component, that the deprivation must be sufficiently serious; and a subjective component, that the defendant official must act with sufficiently culpable state of mind, Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citations omitted), cert. denied sub nom. Foote v. Hathaway, 513 U.S. 1154 (1995).  "Sufficiently serious" for the objective component contemplates "a condition of urgency, one that may produce death, degeneration, or extreme pain."

24

Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J., dissenting) (quoted in Hathaway, supra, 37 F.3d at 66).

It is clear, however, that the Eighth Amendment (while setting a standard for medical treatment for prison inmates) is not the constitutional basis for a pre-conviction arrestee, City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244 (1983). Since Decedent was not convicted of an offense when he sought medical treatment from the police and Sheriff's deputies, he was not being punished and thus his claim is not governed by the Eighth Amendment's ban against cruel and unusual punishment. See Bell v. Wolfish, 441 U.S. 520, 535-37 (1979); Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996).

The Due Process Clause of the Fourteenth Amendment requires jail detainees generally enjoy the same rights against cruel and unusual punishment enjoyed by convicted prisoners. Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) (Docket No. 81, County Defs. Memo. at 5). After the Supreme Court's decision in Kingsley v. Hendrickson, 576 U.S. __, 135 S.Ct. 2466 (2015), holding that excessive force claims brought under the Fourteenth Amendment do not require the same subjective intent as excessive force claims under the Eighth Amendment, the reasoning in Caiozzo that the required a similar Eighth Amendment subjective element was undercut, Darnell v. Pineiro, 849 F.3d 17, 33 (2d Cir. 2017). Following the Kingsley analysis,

> "there is no basis for the reasoning in Caiozzo that the subjective intent requirement for deliberate indifference claims under the Eighth Amendment, as articulated in [Farmer v. Brennan, 511 U.S. 825 (1994)], must apply to deliberate indifference claims under the Fourteenth Amendment. Caiozzo is thus overruled to the extent that it determined that the standard for deliberate indifference is the same under the Fourteenth Amendment as it is under the Eighth Amendment,"

<u>Darnell</u>, <u>supra</u>, 849 F.3d at 35. Now

> "an official can violate the Due Process Clause of the Fourteenth Amendment
> without meting out any punishment, which means that the Due Process Clause
> can be violated when an official does not have subjective awareness that the
> official's acts (or omissions) have subjected the pretrial detainee to a substantial
> risk of harm,"

<u>id.</u> A detainee still needs to allege for this § 1983 claim more than mere negligence by the official, proving "that an official acted intentionally or recklessly, and not merely negligently," <u>id.</u> at 36.

Thus to state a Fourteenth Amendment due process claim for deliberate indifference to a pretrial detainee (like Decedent), the detainee would need to prove that he suffered from a sufficiently serious medical condition and that defendants were deliberately indifferent to that medical condition, <u>Overstreet v. Virts</u>, No. 14CV6582, 2019 U.S. Dist. LEXIS 49527, at *41-42 (W.D.N.Y. Mar. 25, 2019) (Payson, Mag. J.) (on consent) (citing cases)  For the first part of the standard, there must be an actual deprivation of adequate medical care, "that is, a failure of prison officials 'to take reasonable measures' in response to a medical condition," <u>Salahuddin v. Goord</u>, 467 F.3d 263, 279-80 (2d Cir. 2006) (quoting <u>Farmer</u>, <u>supra</u>, 511 U.S. at 844-47).  As for the second part, that deliberate indifference is established objectively, whether defendants knew or should have known that the detainee's condition posed an excessive risk to health or safety, <u>Lloyd v. City of N.Y.</u>, 246 F. Supp. 2d 704, 718-19 (S.D.N.Y. 2017) (quotation marks and citation omitted); <u>Gleeson v. County of Nassau</u>, No. 15CV6487, 2019 U.S. Dist. LEXIS 170373, at *30 (E.D.N.Y. Sept. 30, 2019) (inadequate medical care to deceased jail detainee).

### 3. Qualified Immunity

When confronted by a claim of qualified immunity, one of the first questions for the Court to resolve is whether the facts, taken in the light most favorable to the party asserting the injury, show the official's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). As required by the Saucier Court, this Court first considered the constitutional question, then considered the qualified immunity question, id. But the Supreme Court in Pearson v. Callahan, 555 U.S. 223, 236 (2009), overruled Saucier in requiring courts to first determine whether a constitutional violation occurred before considering whether defendants enjoy qualified immunity. Instead, district courts determine in each case whether to consider first the question of immunity or whether a constitutional violation has occurred, id. at 231-32.

Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, see Frank v. Reilin, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." Anderson v. Creighton, 483 U.S. 635, 641 (1987); Lowth v. Town of Cheektowaga, 82 F.3d 563, 568-69 (2d Cir. 1996).

### B. Alleged Deliberate Indifference

Under this Court's Local Rule 56(a)(2) and the plaintiff's failure here to submit an opposing statement of facts, the movants' Statements of Fact (Docket Nos. 81, 85) are **deemed admitted**. This has obvious consequences on the determination of whether there exist material issues of fact and the usual inference evidence is viewed most favoring the opposing plaintiff, especially those facts surrounding defendants' conduct toward the Decedent.

Defendants do not dispute that Decedent suffered from a serious mental illness. Plaintiff argues that this illness was improperly treated, emphasizing Decedent's condition during his arrest and detention and what little was done by the Town Defendants (Docket No. 93, Pl. Memo. re Town Defs. Motion, at 4-6) and by the County Defendants (Docket No. 94, Pl. Memo. re County Defs. Motion at 4-6), leading to a material issue of fact as to how obvious to defendants was the risk of serious harm to Decedent (Docket No. 93, Pl. Memo. re Town Defs. Motion at 4; Docket No. 94, Pl. Memo. re County Defs. Motion at 4).

Essentially, plaintiff's claim for deliberate indifference can be viewed in three parts: the four hours Decedent was arrested and in Tonawanda police custody; the time (almost seventeen hours) that Decedent was in the Erie County Holding Center; and a third period when he was in Erie County Medical Center from admission (on May 3, 2012, at 12:40 pm) until his cardiac arrest and coma.

Plaintiff and other family members made the Tonawanda police officers aware of Decedent's mental health and the need for medication (Docket No. 85, Town Defs. Statement ¶¶ 49, 51; Docket No. 81, County Defs. Statement ¶ 10; see also Docket No. 93, Pl. Aff. ¶¶ 21-25, 28; Docket No. 95, Aff. of Kara Woods ¶¶ 12, 14). Decedent

28

was treated by the Tonawanda police by receiving the Risperdal provided by plaintiff and administered by defendant paramedic Botham. **That was adequate.** Decedent physically was stable enough to be arrested and transported to the town police station (Docket No. 85, Town Defs. Statement ¶ 44). During that transport, Decedent only made verbal threats and never displayed physical aggression (id. ¶ 47) and after the officers calmed him down, Decedent was placed in a cameraed cell (id. ¶ 48); the observation plaintiff later objects did not occur. Decedent's uncle visited him in that cell (id. ¶ 50); plaintiff did not produce the uncle's statement with his observations of Decedent's condition or how defendants were treating him. Decedent's appearance and condition were such that he was arraigned in his cell and led the trial judge to issue a forensic examination order (id. ¶ 52). Plaintiff point out defendants' testimony that Decedent was sweating profusely, appeared agitated or not knowing what was going on (Docket No. 93, Pl. Atty. Decl. ¶¶ 21-27, Exs. F, McNamara Tr. at 29-31, G, Tonawanda Police Report, H, Salonikis Tr. at 21, Z, Lewandowski Tr. at 7, 8, I, Botham Tr. at 22, 30, Y, Marciano Tr. at 25, 26; Docket No. 93, Pl. Aff. ¶ 28).

The County defendants' treatment of Decedent while he was in ECHC also was adequate. Plaintiff attempted to contact officials there to inform them of Decedent's mental condition (Docket No. 93, Pl. Aff. ¶¶ 30-32). These defendants perform an initial evaluation and forensic evaluation. They note that Nancy Stevens testified that Decedent appeared calm and quiet during the intake interview and nothing struck her as unusual save his high blood pressure (Docket No. 81, County Defs. Statement ¶ 42), and that Decedent was responsive to her questions and was not sweating (id. ¶ 43). Defendant John Robinson was the classification officer that interviewed Decedent on May 3, 2012

(id. ¶¶ 45, 48).  Initially, Robinson did not notice anything in Decedent's demeanor that showed any mental health issues (id. ¶ 49), but, when Decedent vaguely answered Robinson's questions, Robinson thought to refer Decedent to a forensic mental health counselor (id. ¶¶ 50, 53-55 (Decedent refusing to sign form, scribbling on them, providing vague verbal answers)).  Robinson sought forensic mental health to interview Decedent to see if there was some underlying issue and the interview with Ghani began fifteen minutes after Decedent's meeting with Robinson (id. ¶¶ 57, 58, 63, 65).  During Ghani's interview, the Decedent produced the sharpened eyeglasses that led to him being sent to ECMC (id. ¶¶ 69-750.

Plaintiff argues about the reasonableness of the timing of the evaluations and the consequent suffering Decedent endured.  When Decedent's condition worsened (by declining to answer questions or scribbling on forms), he was given that forensic evaluation (that might have happened days later given his initial assessment as a "low" referral).  As he manifested his condition (ultimately by producing the broken glasses), he was sent to ECMC.  The County defendants provided reasonable care while Decedent was in their custody at ECHC.  Thus, the first part of plaintiff's deliberate indifference claim under the Fourteenth Amendment **fails**.  Defendants had not deprived Decedent of adequate medical care while in their respective custodies and took reasonable measures (as the situation warranted) for his care.  While in the Town police's custody, he was administered Risperdal.  When his symptoms heightened in the Holding Center, he was hospitalized.

As for the alleged deliberate indifference of defendants (the second prong under the Due Process Clause analysis), plaintiff has not shown that either the Town

Defendants or the County Defendants acted with objective recklessness in their handling of Decedent and his mental condition. These defendants were informed of Decedent's condition (either through their own observations or by being advised by plaintiff, other family members or, in the County Defendants' case, from the codefendants). Again, the Town Defendants administered Risperdal and the County Defendants repeated evaluations of Decedent and then moved him to Erie County Medical Center when his condition worsened.

Thus, plaintiff's claims for deliberate indifference are **denied** and defendants' Motions for Summary Judgment against those claims are **granted**.

### C. Intervening Cause

Critical to plaintiff's claim is the intervening actions of ECMC medical staff (not named as defendants in this case) after Decedent's admission to ECMC that caused harm to Decedent and ultimately his death. Plaintiff testified that Decedent was injected with Haldol and Ativan while he was in ECMC after having taken a pill of Risperdal within the prior twenty-four hours (Docket No. 81, County Defs. Statement ¶ 13; Docket No. 81, Def. Ex. F, Pl. Dep. Tr. at 44; see also Docket No. 81, County Defs. Statement ¶¶ 131, 133, Ex. W, ECMC medical records at 298 ("Patient Home Meds Resperidol" [sic]); Docket No. 85, Town Defs. Ex. AA, at 16 (ECMC medical record)). Plaintiff researched the effects of those three drugs together and testified that combined they could cause death (Docket No. 81, County Defs. Statement ¶ 13; Docket No. 81, Def. Ex. F, Pl. Dep. Tr. at 44). While plaintiff is not a medical expert or produced as one, her testimony indicates her concession that the ultimate act against her son was not committed by these

defendants. There is no indication that the County Defendants (or the Town Defendants) ordered ECMC staff to administer Haldol and Ativan to control Decedent.

As the Town Defendants note (Docket No. 95, Town Defs. Reply Memo. at 9), this Court may resolve issues of proximate cause and foreseeability "if the evidence conclusively establishes that the was an intervening act which was so extraordinary or far removed from defendants' conduct as to be unforeseeable," Weiss v. Capp, No. 95 Civ. 9324, 1997 U.S. Dist. LEXIS 5182, at *8 (S.D.N.Y. Apr. 17, 1997) (citing New York State cases). Plaintiff's failure to submit a counterstatement of fact leaves her bound by the admitted statements of defendants as to the events in ECMC. She did not introduce medical expert testimony (perhaps, for example, from Dr. Steven Bergmann, see Docket No. 61, Pl. Expert Witness List at 4-5, identified as plaintiff's cardiac expert, or Dr. Brian Joseph, id. at 3-4, plaintiff's psychiatric expert) as to the cause of Decedent's suffering or death to dispute that the medical intervention by ECMC staff superseded defendants' prior actions (or inaction). Decedent was in some distress both in Tonawanda police and Erie County Sheriff's custody but the record shows agitation and sweating (e.g., Docket No. 93, Pl. Atty. Decl. ¶¶ 19-27, citing defendants and other witnesses' testimony) without any signs of medical distress. He was examined prior to being arrested and the paramedic cleared him for arrest and processing (Docket No. 85, Town Defs. Statement ¶ 44; Docket No. 81, County Defs. Statement ¶¶ 21, 25). Tonawanda Police Lieutenant Corey Flatau stated that a suspect with a medical condition would not be transported to the Holding Center, instead they would be transported directly to the Medical Center (Docket No. 81 County Defs. Statement ¶ 30). Decedent was evaluated hours later for intake into ECHC and was deemed fit enough to enter general population (see id. ¶ 42).

The injections at the ECMC created an astronomical level of distress, causing cardiac arrest and a coma.

As for plaintiff's argument that defendants have not provided proof for summary judgment sufficiently under New York State law, she argues the standard for N.Y. CPLR 3212 (without citing that section) should apply in this federal action (Docket No. 93, Pl. Memo. re Town Defs. Motion at 21; Docket No. 94, Pl. Memo. re County Defs. Motion at 10-11). Plaintiff invokes this Court's jurisdiction under 28 U.S.C.§ 1331, federal jurisdiction, as well as § 1343, civil rights for her constitutional claims, and § 1367(a), supplemental jurisdiction for her related state law claims (Docket No. 39, 2d Am. Compl. ¶ 36). Those claims are governed by the Federal Rules of Civil Procedure, including Rule 56 and not New York State summary judgment procedures. If this were a diversity case and "under the Erie doctrine [Erie R.R. v. Tompkins, 304 U.S. 64 (1938)], federal courts sitting in diversity apply state substantive law and federal procedural law," Gasperini v. Ctr. for Humanities, Inc., 518 U.S. 415, 427 (1996), thus Rule 56 still would be applicable. As another district court held "because the summary judgment standard is procedural, Rule 56 alone governs," Reynoso v. Tousson, No. 14CV3564, 2019 U.S. Dist. LEXIS 156982, at *13 (E.D.N.Y. Sept. 12, 2019) (citing cases). Thus, CPLR 3212 and its standards for proof are not applicable in this federal action. Plaintiff's sufficiency argument is rejected; defendants have established the absence of material fact and entitlement to judgment as a matter of law.

D.  Service of Individual Defendants and Qualified Immunity

    1.  Service of Defendants

Plaintiff failed to serve the individual defendants with the Second Amended Complaint.  The initial pleading alleged John Doe defendants and was served on the Town and Erie County.  The amended pleading was served only upon defense counsel for the municipalities (<u>see</u> Docket No. 93, Pl. Memo. re Town Defs. Motion at 13; Docket No. 94, Pl. Memo. re County Defs. Motion at 21 (service upon the County Clerk)).  The proof of service attached to the Second Amended Complaint said that it was served upon counsel for the Town and then-counsel for the County (Docket No. 39, 2d Am. Compl. Cert. of Service).

The County Defendants outline the methods for individual service under Federal Rule of Civil Procedure 4(e), concluding that plaintiff did not use any of those methods to serve the individual defendants (Docket No. 81, County Defs. Memo. at 21).  Plaintiff argues (without citation) that New York courts allow service of a municipal representative instead of serving the actual employee or official, noting this allowance for claims against the employee in their official capacity denying any prejudice to the employees in their individual capacity (<u>e.g.</u>, Docket No. 94, Pl. Memo. re County Defs. Motion at 21).  Plaintiff, however, sued these individuals in their official and individual capacities (Docket No. 39, 2d Am. Compl. ¶¶ 50, 51).  Thus, for jurisdiction over the individual defendants in their <u>individual</u> capacities, they needed to be served or waived service.  No such waiver of service has been filed by any of the individual defendants.  Plaintiff also has not shown that the attorneys actually served were deemed agents authorized to receive process for the individual defendants, <u>cf.</u> Fed. R. Civ. 4(e)(2)(C), (1) (applying state law for service);

see also N.Y. CPLR 308(3) (delivery to agent), (2) (delivery to person of suitable age at individual's actual place of business, dwelling place, or usual place of abode).

Federal Rule of Civil Procedure 4(m) provides that this Court (either on its Motion or on the Motion of the defendant not served) shall dismiss without prejudice a defendant not served within 120 days after filing of the Complaint or order service upon that defendant. If plaintiff shows good cause for the failure, "the court must extend the time for service for an appropriate period," id. (Docket No. 85, Town Defs. Memo. at 22). These individual defendants have yet to be served. Plaintiff has not shown good cause for failing to serve the individual defendants. Instead, she merely relies upon service of the amended pleading (Docket No. 39) which named new parties upon defense counsel in the case, as if they also representing the newly named individual defendants in the amended pleading.

Leading to this Second Amended Complaint, plaintiff had moved for an extension of time to amend the Complaint and name the John Doe defendants alleged in earlier pleadings (Docket No. 27). Magistrate Judge Leslie Foschio granted that motion, giving plaintiff 90 days to amend and to "identify and serve John Doe Defendants" (Docket No. 36, Order of Apr. 1, 2014, at 3 (emphasis in original)). After filing of the Second Amended Complaint, each set of defendants answered asserting lack of jurisdiction due to improper service of process (Docket No. 40, Town Defs. Ans. to 2d Am. Compl. ¶ 15; Docket No. 41, County Defs. Ans. to 2d Am. Compl. ¶ 25).

Thus, this case could be dismissed as to the individual defendants, but without prejudice, or plaintiff could be ordered (as she alternatively requests, e.g., Docket No. 93, Pl. Memo. re Town Defs. Motion at 13-14) to serve them. Either result exposes these

35

defendants to liability if plaintiff were to serve them properly. Given the disposition stated elsewhere in this Decision and Order, properly re-serving this Complaint upon these defendants would be futile.

## 2. Qualified Immunity

Since this Court first considered the substantive merits of plaintiff's claims and defendants' defenses on the constitutional question (namely deliberate indifference to Decedent's welfare), cf. Pearson, supra, 555 U.S. at 236, and found that no constitutional violation has occurred, the individual defendants **enjoy qualified immunity**. Plaintiff's claims against them **are dismissed on qualified immunity grounds**; defendants' Motions for Summary Judgment (Docket Nos. 85, 81) on these grounds is **granted**. This is a further ground for the futility of either dismissing without prejudice for the failure to serve the individual defendants or granting plaintiff leave (nunc pro tunc) to serve them properly since these defendants enjoy qualified immunity if served again.

## E. Town Defendants' Deprivation of Parental Rights

Plaintiff accuses the Town Defendants of depriving Decedent's children of the parental care, nurturing, and guidance from Decedent, citing Ajamu Uwadiegwu v. Department of Social Services, 91 F. Supp. 3d 391 (E.D.N.Y. 2015), for the proposition that "parents have a fundamental liberty interest in the care, custody and management of their child," id. at 395-96 (quoting Santosky v. Kramer, 455 U.S. 745, 753 (1982) (process due for termination of parental rights); see also Tenebaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999)) (Docket No. 93, Pl. Memo. re Town Defs. Motion at 10). The Ajamu Uwadiegwu court dismissed a due process claim by a non-custodial parent alleging

deprivation of visitation rights, 91 F. Supp. 3d at 395-96, noting that "'[D]istrict courts in this Circuit have repeatedly dismissed . . . due process claims where there is no allegation that the parents were ever deprived of custody over their children,'" (quoting K.D. v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 215 (S.D.N.Y. 2013). As in other cases, plaintiff here has not alleged conduct by the Town Defendants that threatened the custody of Decedent's children, failing to state a claim under § 1983 for deprivation of due process, see Daniels v. Murphy, No. 06CV5841, 2007 U.S. Dist. LEXIS 47838 (E.D.N.Y. July 2, 2007); Ajamu Uwadiegwu, supra, 91 F. Supp. 3d at 396; see also Duchesne v. Sugarman, 566 F.2d 817, 824 (2d Cir. 1977) (removal and detention of children without parental consent or court authorization).

Decedent's arrest and detention had the collateral effect of depriving his children of his care, nurturing and guidance (as for the Town Defendants) for the four hours he was in the custody of the Tonawanda Police Department. The Town Defendants cannot be held liable for Decedent's subsequent detention with Erie County and his hospitalization and the consequent deprivation of contact, care and alike with his children. Cases involving parental rights involve termination of those rights beyond several hours and formal proceedings to terminate those rights, e.g., Santosky, supra, 455 U.S. 745, or removal of children without parental consent, Duchesne, supra, 566 F.2d at 824. For example, Ajamu Uwadiegwu, supra, 91 F. Supp. 3d at 396-97, rejected extension of parental rights now claimed by plaintiff for deprivation of visitation.

While arguing that the Town Defendants have not presented legal authority that plaintiff could not bring this claim (id. at 11), plaintiff has not asserted that this claim to parental rights have been applied in a situation like this, where a parent is arrested and

detained away from their children for hours.  Plaintiff's contention would raise a detainee's parental rights upon arrest and detention of any parent without any further action by the arresting authorities; with those rights infringed merely upon the arrest.  That is not the law.  New York State cases have examples of detainees retaining their parental rights while in jail.  For example, In re Adoption of Kyle, 156 Misc.2d 260, 261-62, 592 N.Y.S.2d 557, 558 (Steuben County Surr. 1992) (Scudder, Surr.), an expectant father was in jail awaiting trial.  During the pregnancy, the father sought a paternity petition and a petition of visitation to confirm his parental rights.  After the birth of the child, Kyle, the detained father had jail visits with him.  After the relationship with the mother ended and she judicially surrendered Kyle for eventual adoption, the father was served with consent to adoption form; the father objected strenuously to the adoption and filed a paternity petition.  Id., at 261-62, 592 N.Y.S.2d at 558.  The father (after his conviction and sentencing) proposed that other relatives would keep Kyle while the father served his sentence with visitation arranged if the father was housed at nearby correctional facilities, id. at 262, 592 N.Y.S.2d at 558.  The court terminated parental rights, however, because of the father's inability to care for the child while in state custody, distinguishing from a situation if the father were "to be released from jail in 40 days, rather than 4 years," id. at 265, 592 N.Y.S.2d at 560, 561-62.

In another case, the Third Department noted that the fact that a mother is jailed does not automatically terminate her parental rights, Matter of Timothy GG. (Meriah GG.), 193 A.D.3d 1065, 81 N.Y.S.3d 311 (3d Dep't), appeal denied, 32 N.Y.3d 908, 89 N.Y.S.3d 115 (2018).  Social Services there had removed the child due to the mother's drug use, and she was later jailed, id. at 1066, 81 N.Y.S.3d at 315.  Social Services later arranged

for the mother to visit the child while in jail and during the pendency of formal termination of parental rights proceedings, id. at 1071, 1066-67, 81 N.Y.S.3d at 319, 315. The termination was based upon permanent neglect, defined as failure over a period of a year to maintain contact with or plan for the future of the child, id. at 1070, 81 N.Y.S.3d at 318, citing N.Y. Soc. Serv. Law § 384-b[7][a], and Matter of Kaylee JJ. [Jennifer KK.], 159 A.D.3d 1077, 1077-78, 71 N.Y.S.3d 220, 223 (3d Dep't 2018), where Social Services was obliged to establish that it made diligent efforts to encourage and strengthen the parent's relationship with the child, Matter of Timothy GG., supra, 163 A.D.3d at 1070, 81 N.Y.S.3d at 318 (citations omitted); see N.Y. Soc. Serv. L. § 384-b[7][a], [f], manifested here by the arranged prison visits and calls.

These cases show that mere arrest and detention for hours rather than days or months do not revoke the detainee's parental rights to state a cause of action. Formal process to revoke those rights is required. Decedent here remained the father of his three children despite his jailing and subsequent hospitalization.

An analogous situation was presented in Duchesne, supra, 566 F.2d at 822-23. There, plaintiff was a mother of two children and went to a hospital for emotional problems. She left her children in the care of a baby sitter, with plaintiff believing that she would receive out-patient care and return home. Instead, plaintiff was admitted in the hospital and stayed for six days. Unable to care for the children beyond the first night, the baby sitter turned the children to child welfare officials. The child welfare office contacted plaintiff and asked her to sign temporary custody of the children to that office, but plaintiff refused. The agency then seized the children. After her hospital discharge, plaintiff demanded restoration of her children but was denied. Plaintiff sued in state court

39

to restore the children which was granted on appeal. Id. at 824. She then brought a federal action for the due process violation in seizing her children without her consent or court authorization. The Second Circuit reversed the denial of her due process claim, holding that plaintiff had a liberty interest in family privacy that was entitled to due process before it was interfered with, id. at 824-28, 825.

The key distinction from the case at bar is the absence in this case of process to terminate Decedent's parental rights. Like any other arrestee or detained person with children, Decedent merely lost access to his children during the detention but no action was taken by defendants to terminate his parental rights. This is especially apt for the claim against the Town Defendants, who detained Decedent for only a few hours. Family members visited Decedent at the police station (Docket No. 85, Town Defs. Statement ¶ 50). Plaintiff does not allege that Decedent was prevented from seeing his children while in Tonawanda police custody or further deprived of his parental rights. Aspects of those parental rights were disrupted by Decedent's hospitalization, coma, and subsequent death but Decedent legally retained those rights although he could not actually implement them.

This discussion from the cases above is the parent's rights, but plaintiff's claim here is on behalf of the children (see Docket No. 93, Pl. Memo. re Town Defs. Motion at 10-11), see McKee v. Colt Electronics Co. 849 F.2d 46, 50 (2d Cir. 1988) (questions of children's inheritance rights in wrongful death action). McKee recognized under New York law that children could "recover for the pecuniary loss suffered as a result of the lost nurture, care, and guidance they would have received if the parent had lived," id. This would come into play only if plaintiff stated a wrongful death claim against the Town

40

Defendants.  Plaintiff cites no other cases in which the children exercised the right for parental nurturing, care, and guidance.

Therefore, so much of the Town Defendants' Motion for Summary Judgment dismissing the Tenth Cause of Action for deprivation of Decedent's parental rights (and the infants' rights thereto) is **granted**.

F.  False Arrest

Plaintiff argues (in support of her Seventh and Eighth Causes of Action against the Town Defendants and her Ninth Cause of Action against the County Defendants) that there is a material issue of fact whether the Tonawanda police had probable cause to arrest Decedent given his condition at the time of the incident (Docket No. 93, Pl. Memo. re Town Defs. Motion at 10).  Plaintiff's probable cause analysis assumes that an arrest could only occur if the suspect had the mental capacity to commit an offense (id. at 8). The Town Defendants correctly state the scope of probable cause (Docket No. 95, Town Defs. Reply Memo. at 5-6).  That is, "all that is necessary for the Town Defendants to have arrested decedent at the scene is probable cause that he committed a crime" (id. at 5 & n. 14, citing Beck v. Ohio, 379 U.S. 89, 91 (1964)).  Probable cause is a complete defense to a false arrest or imprisonment claim, Weyant, supra, 101 F.3d at 853 (Docket No. 85, Town Defs. Memo. at 17-18 & 18 n.64).

Probable cause to arrest "exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been committed (2) by the person to be arrested," United States v. Fisher, 702 F.2d 372, 375

(2d Cir. 1983).  The Supreme Court, in Illinois v. Gates, 462 U.S. 213, 235 (1983), stated that probable cause "means less than evidence which would justify condemnation."  The probable cause determination is limited to "the facts known by the arresting officer at the time of the arrest," Gonzalez v. City of Schenectady, 728 F.3d 149, 155 (2d Cir. 2013); see also Warren v. Dyer, 906 F.2d 70, 73 (2d Cir. 1990).  It is not necessary at this point to make a final determination of guilt "through the weighing of evidence," Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989); see also Gordon Mehler, John Gleeson, David C. James, and Alicyn L. Cooley, Federal Criminal Practice:  A Second Circuit Handbook 679-80 (19th ed. 2019).

Plaintiff argues that the Tonawanda police officers needed to know that Decedent had the mens rea to commit offenses or observe that he lacked the capacity to so act and thus had no probable cause to arrest.  The standard, however, is what a reasonable officer does in that circumstance.  That officer is not determining whether the suspect could be convicted of the offense; rather, that officer has probable cause to arrest if an offense has been committed by the suspect.

Cases discussing mens rea and probable cause involve so-called mens rea offenses, such as arrests for disorderly conduct during protests, e.g., Zalaski v. City of Hartford, 723 F.3d 382, 385, (2d Cir. 2013); United States v. Nelson, 500 F. App'x 90 (2d Cir. 2012) (summary Order), harassment charge lodged by police officer, Boyler v. City of Lackawanna, 765 F. App'x 493, 496 (2d Cir. 2019) (summary Order).  Decedent was arrested for attempted robbery, endangerment of the welfare of a child, menacing, and unlawful possession of marijuana.  One of these offenses has mens rea as an element; endangerment of the welfare of a child under N.Y. Penal Law § 260.10(1) requires proof

that the defendant have knowledge or awareness "that the conduct may likely result in harm to a child," People v. Johnson, 95 N.Y.2d 368, 372, 718 N.Y.S.2d 1, 2 (2000) (Wesley, J.) (defendant must simply be aware that the conduct may likely result in harm to a child, emphasis in original); see People v. Berlin, 39 A.D.3d 351, 354, 835 N.Y.S.2d 54, 567 (1st Dep't), appeal denied, 9 N.Y.3d 840, 840 N.Y.S.2d 767 (2007). Unlawful possession of marijuana in the second degree also requires knowing and unlawful possession, N.Y. Pen. L. § 221.05; see also id., § 15.05(2) (knowingly defined). Menacing in the second degree, N.Y. Pen. L. § 120.14(2), requires conduct that intentionally places another person in reasonable fear of physical injury; see also N.Y. Pen. L. § 15.05(1) (defining intentional conduct). Robbery and attempted robbery in the second degree, N.Y. Pen. L. §§ 160.00, 160.10(3), 110, requires the intention to commit a robbery, while robbery itself does not have a culpability element. Thus, if Decedent were tried, he might have defense of lack of mental capability to commit most of these offenses. The Tonawanda police, however, were not at that stage when they arrested Decedent.

Other cases found that flight and furtive action are indicia of mens rea, e.g., Sibron v. New York, 392 U.S. 40, 66-67 (1968), United States v. Young, 750 F.2d 220, 222 (2d Cir. 1984). Here, complainant reported Decedent's attempt to rob her from her car with her children inside. Witnesses saw Decedent run into the Walgreens after being confronted by an ambulance driver (Docket No. 85, Town Defs. Statement ¶¶ 36-38, 39; see also Docket No. 85, Town Defs. Memo. at 18-19). Whether Decedent had the capability to form the mens rea for the offenses charged we will never know, but for purposes of probable cause for his arrest and detention and this case, that determination does not need to be made. The Tonawanda officers had probable cause to arrest

decedent and that probable cause is a complete defense to plaintiff's false arrest claims. So much of the Town Defendants' Motion (Docket No. 85) on these claims are **granted**.

The County Defendants separately argue that the town judge's order rendered Decedent's confinement with the County privileged (Docket No. 81, County Defs. Memo. at 19-20; <u>see</u> Docket No. 85, Town Defs. Ex. FF, Commitment Order). Plaintiff points out part of that order of confinement that called for a mental health evaluation (Docket No. 94, Pl. Memo. re County Defs. Motion at 9). This condition was met by the initial screening conducted by nurse Sinclair (Docket No. 81, County Defs. Statement ¶¶ 34-39, 62, Exs. K, L). Kelli Ghani sought to evaluate Decedent on May 3 upon the request of the classification deputy who had concerns that Decedent appeared to be acting "odd" (<u>id.</u> ¶ 63). Decedent thus had two mental health evaluations, the latter leading to his transfer to ECMC.

The operative part of the order (Docket No. 85, Town Defs. Ex. FF), however, placed Decedent into the Erie County Sheriff's custody. A confinement is privileged under New York law for a false imprisonment claim, "to the extent that it is imposed 'under color of law or regulation, specifically in accordance with regulations,'" <u>Nelson v. State of N.Y.</u>, 20 Misc.3d 1125(A), 867 N.Y.S.2d 376, 376 (Ct. Cl. 2008). Plaintiff here does not argue that the town judge's order was not imposed under color of law or not in accordance with regulations. Decedent's confinement was not conditioned upon his evaluation (only bail was not set until that forensic evaluation, Docket No. 85, Town Defs. Ex. FF), even though the evaluations were conducted.

Decedent's confinement by the County from May 2-3, 2012, was privileged, <u>Kemp v. Waldron</u>, 125 Misc.2d 197, 199, 479 N.Y.S.2d 440, 441 (Sup. Ct. Schenectady County

1984), aff'd, 115 A.D.2d 869, 497 N.Y.S.2d 158 (3d Dep't 1985); see N.Y. Corr. L. § 500-c (4), (9) (Docket No. 81, County Defs. Memo. at 19).  Therefore, plaintiff's Ninth Cause of Action is **dismissed**.

Correction Law § 500-c gives the Sheriff exclusive control over the jail and its inmates pursuant to commitment orders are in the Sheriff's custody, N.Y. Corr. L. § 500-c (4), (9) (Erie County provision).  The Sheriff is exclusively responsible for the custody, treatment, care, and control of inmates, Edwards v. Onondaga County, 39 Misc.2d 443, 445, 290 N.Y.S. 789, 791 (Sup. Ct. Cayuga County 1963); Kemp, supra, 125 Misc.2d at 199, 479 N.Y.S.2d at 441.  A federal court held that the Sheriff's duty of reasonable care is to protect inmates from foreseeable risks of harm, Pizzuto v. County of Nassau, 239 F. Supp. 2d 301, 312 (E.D.N.Y. 2003).  Thus, it is proper for the County Defendants to argue (see Docket No. 81, County Defs. Statement ¶ 5) that plaintiff's claims fail because she did not sue the Sheriff, the person exclusively responsible for Decedent and his care during his detention at the Holding Center.

G.  Plaintiff's Expert Opinion

Plaintiff produced the opinion of Michael Levine in opposition to defendants' motions (e.g., Docket No. 93, Pl. Atty. Decl. ¶ 12, Ex. A; see also Docket No. 74, Pl. Expert Disclosure (Levine)).  Mr. Levine is one of several experts disclosed by plaintiff (see Docket Nos. 50 (initial expert disclosure for economist Dr. Ronald Reiber), 61 (plaintiff's list of expert witnesses)), including two medical doctors, psychiatrist Dr. Joseph and cardiac specialist Dr. Bergmann, and sociological expert Dr. Charles Patrick Ewing, Ph.D. (Docket No. 61).  Plaintiff, however, only produced the opinion of Levine in opposition to these Motions (but cf. Docket No. 85, Town Defs. Ex. TT, expert disclosure

of Dr. Brian Joseph, Ex. SS, expert disclosure of Dr. Charles Patrick Ewing).  The Town Defendants submitted expert disclosure from Lt. Brian Gould of the Cheektowaga Police Department (id., Ex. QQ, report at 9-12, 27-32) and nurse Barbara Mariano (id., Ex. RR, report at pages 13 of 15 to 15 of 15), concluding that they took appropriate steps while Decedent was in their custody for less than 24 hours.

Michael Levine, as initially described in plaintiff's expert witness list (Docket No. 61, at 1-2), is a consultant and investigator and a law enforcement instructor.  Levine is an expert on law enforcement practices and is offered to testify "to standards and training of law enforcement in the handling of the mentally ill, as well as law enforcement procedures and protocol in general" (id. at 2).  Plaintiff later filed a more detailed statement of Levine's proffered testimony, including his expert report (Docket Nos. 74, 93, Pl. Atty. Decl. Ex. A).  Levine

> "is expected to testify that Defendants' actions were in reckless disregard for the health and safety of the decedent, Kristian Woods.  He will testify that the conduct of the Defendants were [in] [sic] direct violation of national and professional standards as they relate to the use of police force and authority.  The Defendants were careless/reckless and/or negligent by forcefully incarcerating the decedent in lieu of seeking qualified medical aid in light of the readily available and much publicized training programs regard the appropriate handling of suspected Excited Delirium Syndrome.  He will testify regarding his history in law enforcement and training.  He will testify regarding the national standards in regard to police procedures and police use of force.  He will testify regarding police training as it relates to Excited Delirium Syndrome.  He will testify how most documented cases occurred in police custody and that a significant percentage of those cases when not treated with rapid medical intervention, result in death.  He will testify how the training, which has been readily available for years, has saved lives and such training is currently part of mandated training for officers throughout the US.  He will testify that the use of force by the Defendants was not reasonable and was not applied in good faith but was applied maliciously and for the purpose of causing harm.  He will testify that the Defendants' conduct was in violation of all professional and national standards and those actions hastened Mr. Woods' death by using massive restraining force instead of seeking qualified Medical help that might have saved his life; the weight of multiple full grown men

holding decedent down, using confrontational tactics when all recommendations and training mandate a trained professional be used to talk him down, calm him using [sic?] excessive restraint; and failing to obtain the necessary medical attention. He will testify that the appropriate course of conduct for the police and the Erie County Holding Center Personnel was to seek immediate medical attention for Mr. Woods. He will testify that there was a lack of appropriate training for the police and a failure to appropriately notify the EMTs of the requirements to seek immediate medical attention for a person exhibiting indications of Excited Delirium Syndrome. He will also comment on the testimony of other experts testifying in this matter. He will comment and provide opinions on evidence produced at trial and any subsequent evidence that may come to light as it relates to the foregoing."

(Docket No. 74, Pl. Expert Disclosure (Levine) at 2-3). Levine bases his expert testimony upon the review of documents and materials listed in his report, "along with his training, experience and expertise in law enforcement over nearly fifty (50) years" (id. at 3). Levine had a 25-year career with the United States Drug Enforcement Administration and made over 3,000 arrest and attended or taught training over his career in the use of force (including arrests of emotionally disturbed persons) (id. at 3-4, Ex. B, Levine's curriculum vitae, Ex. A, Levine Report at 3-14).

Plaintiff later concedes that Levine is not a medical doctor and she is not relying upon his expert testimony to render a medical opinion or diagnosis (Docket No. 93, Pl. Memo. re Town Defs. Motion at 24). She contends that Levine is experienced with Excited Delirium Syndrome from his years in law enforcement, including dealing with persons "exhibiting bizarre behavior" (id.). She further claims that the materials Levine reviewed are helpful because they discuss police training and responses in dealing with those undergoing a mental breakdown (id. at 23-24). Defendants oppose consideration of Levine's report precisely because he is not a medical doctor and appears to make medical diagnoses (Docket No. 85, Town Defs. Memo. at 38; Docket No. 81, County Defs.

Memo. at 24). The journals cited by Levine are police-related publications and not medical journals (Docket No. 81, County Defs. Memo. at 24). Levine in his expert report describes Excited Delirium Syndrome as described in "police crises training and other related literature" (Docket No. 74, Ex. A, Levine Report at 21), some written by medical professionals (id. at 21-22, 26-29, 32-34, articles by Drs. Jeffrey Ho, Brian Roach, Kelsey Echols, and Aaron Burnett).

Plaintiff counters that Levine's testimony will focus on police procedures, on how the defendants should have handled a person with obvious mental illness "including Excited Delirium Syndrome" (Docket No. 93, Pl. Memo. re Town Defs. Motion at 23).

Levine opined that defendant officers who forcefully incarcerated Decedent in lieu of providing medical aid ignored national training programs "that alert law enforcement to a fatal condition now referred to as Excited Delirium Syndrome (ESD [sic]), whose symptoms were being manifested by off-duty Fireman, KRISTIAN WOODS" (Docket No. 74, Ex. A at 38), that Decedent manifested "ALL the classic symptoms of a life-threatening mental condition during a 48 hour period as a result of which he fell into a coma and subsequently died, amounted to death by torture" (id.). Levine further opines that the totality of reports from the scene of Decedent's arrest "indicate, beyond a reasonable certainty, that throughout these events DECEDENT's bizarre actions and statements were entirely consistent with him suffering with EXCITED DELIRIUM SYNDROME" (id. at 42). The report continues with similar opinions as to Decedent's injuries and defendants' actions (and inaction) concluding that defendants' conduct fell below professional standards.

Defendants urge that this Court disregard Levine's opinion because it is beyond his areas of expertise, it is not based on accurate facts, and it contains sensational statements designed (as the Town Defendants contends) to "shock the conscience" (Docket No. 85, Town Defs. Memo. at 38-39; Docket No. 81, County Defs. Memo. at 24). Levine discusses use of force and use of deadly force and state events that did not occur (such as Decedent being placed in a straitjacket, although none was ever used (id. at 51; but cf. Docket No. 81, County Defs. Memo. at 24)). Levine reviewed Dr. Joseph's expert report but fails to reference any diagnosis in that report (Docket No. 85, Town Defs. Memo. at 38); Dr. Joseph opined that Decedent did not suffer from Excited Delirium Syndrome but instead agitated manic delirium and/or a reaction to synthetic marijuana (id. at 39 n.142; No. 85, Town Defs. Ex. TT, Expert Disclosure of Dr. Brian Joseph). This Court notes that defense expert, Lt. Gould (also not medically trained) concluded that Decedent did not display all the symptoms for Excited Delirium Syndrome and, had he done so, would not have been able to have been transported during his detention (Docket No. 85, Town Defs. Ex. QQ, at 28-29) and that Decedent's behavior during the arrest and at the ECHC "does not look similar to any of the cases of Excited Delirium Syndrome that have been documented" (id. at 29). Lt. Gould also noted that the situation with Decedent during May 1-3, 2012, "represented a constantly changing level of emergency" (id. at 29-31).

Both sides focus on Federal Rule of Evidence 702 (see Docket Nos. 85, Town Defs. Memo. at 36-37; 81, County Defs. Memo. at 23, 94, Pl. Memo. re County Defs. Motion at 11-12), the rule authorizing the admission of expert testimony. Pursuant to this Court's gatekeeper role, see Daubert v. Merrell Down Pharm., Inc., 509 U.S. 579 (1993),

this Court determines if a purported expert's testimony is admissible. At summary judgment, this Court can "'decide questions regarding the admissibility of evidence, including expert opinion evidence,'" Foley v. United States, 294 F. Supp. 3d 83, 91 (W.D.N.Y. 2018) (Larimer, J.) (quoting Bah v. Nordson Corp., No. 00-cv-9060, 2005 U.S. Dist. LEXIS 15683 (S.D.N.Y. Aug. 1, 2005)). For "[o]n a summary judgment motion, a district court properly considers only evidence that would be admissible at trial," Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998); Foley, supra, 294 F. Supp. 3d at 91, even if that exclusion is outcome-determinative, Berk v. St. Vincent's Hosp. & Med. Ctr., 380 F. Supp.2d 334, 351 (S.D.N.Y. 2005); Foley, supra, 294 F. Supp. 3d at 91. "The court performs the same role at the summary judgment phase as at trial; an expert's report is not a talisman against summary judgment," Raskin v. Wyatt Co., 125 F.3d 55, 66 (2d Cir. 1997); Berk, supra, 380 F. Supp. 2d at 351.

Rule 702 states

"A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

"(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

"(b) the testimony is based on sufficient facts or data;

"(c) the testimony is the product of reliable principles and methods; and

"(d) the expert has reliably applied the principles and methods to the facts of the case."

While Mr. Levine may be an expert in police practices and procedures and in how the police should appropriately use force, there is no basis for him (effectively) to diagnose Decedent at the time of this incident and then draw conclusions on how the defendants reacted to that diagnosed condition. Levine's opinion stresses that the police needed to

recognize the signs and symptoms of Excited Delirium Syndrome and appropriately send the person manifesting these signs to medical treatment. But the record for these Motions has not established that Decedent suffered from Excited Delirium Syndrome, the factual predicate for Levine's opinions. Non-medical personnel, such as police expert witnesses (Docket No. 85, Town Defs. Ex. QQ, Lt. Gould expert disclosure at 28-29), differ on whether Decedent was suffering from that syndrome. Thus, under Rule 702(a), Levine's opinion does not help this Court understand the evidence or determine the facts in issue. Also, under Rule 702(b), this opinion is not based upon facts or data. Levine envisioned a use of force scenario in May 2012, summarized by plaintiff in the expert disclosure as having multiple officers holding Decedent down (Docket No. 74, Pl. Expert Report (Levine) at 2) where there was no testimony of that occurring. Absent a medical diagnosis of Decedent suffering from Excited Delirium Syndrome, which was not provided here, Levine has no basis to render opinions.

Plaintiff has not presented admissible proof of the diagnosis of Excited Distress Syndrome, save Levine's opinion. Plaintiff concedes that Levine is not a medical expert, but police procedural expert. Levine's opinion is introduced (responding to these motions for summary judgment) to show material issues of fact exist as to how defendants should have handles situation with mentally ill suspect acting out their illness, specifically Excited Delirium Syndrome. To assist on these Motions, plaintiff needed admissible evidence of the claimed diagnosis or Levine's opinion needed to be tailored to the general condition of the manifestation of mental illness, see Fed. R. Civ. P. 56(c)(2), (4).

This Court agrees with defendants and **has not relied upon Levine's opinion** in deciding defendants' Motions. Levine's report contains speculation and conjecture and

is inadmissible under Rule 702 for these Motions, see Foley, supra, 294 F. Supp. 3d at 95.  Levine's report (Docket No. 74, Ex. A) is also unsworn and such expert reports do not satisfy the admissibility requirements of Rule 56(c)(4) and cannot be used without additional affidavit support to defeat a summary judgment motion, Berk, supra, 380 F. Supp. 2d at 352-53; Foley, supra, 294 F. Supp. 3d at 99.

The Court only notes, and has not relied upon, the other non-medical opinion of Lt. Gould (Docket No. 85, Town Defs. Ex. QQ) regarding whatever Decedent's diagnosis might have been.

Rule 56 allows this Court to consider materials in the record even if not asserted by the movants or opponents, Fed. R. Civ. P. 56(c)(3).  Dr. Joseph, a board-certified psychiatrist was identified by plaintiff as her expert who reviewed Decedent's mental health records, Decedent's autopsy and consultation reports, deposition transcripts of various eyewitnesses, and interviews with plaintiff and Kara Woods (Docket No. 85, Town Defs. Ex. TT, Dr. Joseph Expert Disclosure, at 1-5).  From that material and his medical expertise, Dr. Joseph opined that Decedent suffered from manic delirium or a psychotic episode due to synthetic marijuana (id. at 5, 6), concluding that Town Defendants or County Defendants should have hospitalized Decedent sooner and he would have avoided cardiovascular collapse (id. at 6).  Plaintiff, however, does not cite to this opinion in support of identifying material issues of fact in opposition to the pending summary judgment motions.

Dr Joseph's opinion (id.) does not establish an issue of material fact to preclude summary judgment.  That opinion simply indicates that there may be an issue of fact but only as to the first prong for a deliberate indifference claim under the Due Process Clause;

that is, whether defendants failed to take reasonable measures with Decedent in delaying treatment for about 24 hours.  As noted above, Decedent manifested some symptoms of mental illness but was deemed to be well enough to be arrested and transported from Tonawanda to the Erie County Holding Center.  Or, as Lt. Gould termed it in his opinion, Decedent's behaviors were "constantly changing levels of emergency" (Docket No. 85, Town Defs. Ex. QQ, at 30).  Dr. Joseph's opinion, however, does not address the second prong, whether defendants knew or should have known that Decedent's treatment during those hours posed an excessive risk to his health.  Decedent's cardiac arrest occurred, however, **after** he was out of defendants' custody and was in the Erie County Medical Center for treatment.  To hold the Town and County Defendants liable despite this intervening event would require their knowledge of the potential methods of treatment at the Medical Center that, if Decedent became disruptive (as he did), staff at the Medical Center would use two medicines that with the Risperdal in his system would be toxic and ultimately fatal.  Thus, Dr. Joseph's opinion **does not** establish an issue of material fact to preclude summary judgment for defendants.

H.  Remaining Contentions

Defendants raise other arguments for dismissal of plaintiff's claims and plaintiff made countering assertions.  They need not be addressed further than as explained below.  Most of these are not dispositive of plaintiff's case.  Finding above that defendants were not deliberately indifferent to Decedent during his detention, the training of the respective defendants (including the responsibility of the County for the training of Sheriff's deputies) is no longer at issue.  Also, plaintiff's claim for punitive damages (applicable only against the remaining individual defendants in their individual capacities,

Smith v. Wade, 461 U.S. 30 (1983); see City of Newport v. Fact Concerts, supra, 453 U.S. at 271) is **dismissed** with dismissal of her overall claims.

This Court also has not addressed the defendants' General Municipal Law defenses about the timeliness of the Complaint relative to predicate examinations under General Municipal Law §§ 50-h and 50-i. This Court will not delve into the New York State law question of what constitutes the "event upon which the claim is based," N.Y. Gen. Mun. L. § 50-i (1), that starts the limitations period for plaintiff's claims against municipal defendants (cf. Docket No. 93, Pl. Memo. re Town Defs. Motion at 17-18), cf. Sexstone v. City of Rochester, 32 A.D.2d 737, 301 N.Y.S.2d 887 (4th Dep't 1969) (the running of period is measured from date negligent act produced injury, not time of negligent act)). This Court also will not comment further on the County Defendants' defenses related to the distinction between the Sheriff (not named as a defendant) and the County.

## IV.    CONCLUSION

Both groups of municipal defendants here raised numerous grounds for dismissal of this case. As tragic as Decedent's final days and death might be, plaintiff (on behalf of his estate and beneficiaries) has not alleged a cognizable federal claim against these defendants. Defendants' Motions for Summary Judgment (Docket Nos. 85, 81) thus are **granted**.

## V.    ORDERS

IT IS HEREBY ORDERED, that the Town Defendants' Amended Motion for Summary Judgment (Docket No. 85) is GRANTED but their original Motion for Summary Judgment (Docket No. 82) is TERMINATED in favor of the Amended Motion.  IT IS FURTHER ORDERED, that the County Defendants' Motion for Summary Judgment (Docket No. 81) is GRANTED.

FURTHER, the Clerk of Court is directed to close this case.

SO ORDERED.


Dated:        April 8, 2020
              Buffalo, New York


                                                s/William M. Skretny
                                               WILLIAM M. SKRETNY
                                               United States District Judge